

FILED
APR 17 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW ADAM JAY,

    Petitioner,

vs.

ARNOLD SCHWARZENEGGER, Governor;
BEN CURRY, Warden,

    Respondents.
_____/

Case No. CV 08 1998 CW (PR)

MEMORANDUM OF LAW WITH POINTS AND AUTHORITIES

IN SUPPORT OF HABEAS CORPS PETITION

Matthew Adam Jay, D-55653
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro se

# TABLE OF CONTENT

|  | Page: |
|---|---|
| TABLE OF CASES AND AUTHORITIES | i |
| MEMORANDUM OF LAW | 1 |
| Claim I   THE BOARD OF PAROLE HEARINGS DECISION FINDING PETITIONER UNSUITABLE FOR PAROLE OVER TWO DECADES AFTER THE COMMITMENT OFFENSE WAS NOT SUPPORTED BY EVIDENCE THAT HE IS A <u>CURRENT</u> THREAT TO PUBLIC SAFETY, VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. | 1 |
| A. Petitioner has A Liberty Interest in Parole | 1 |
| B. After 21 Plus Years Into A 15 Years to Life Sentence, There Is No Evidence Petitioner Is A CURRENT Threat to the Public. | 1 |
| b(1). Having exceeded his minimum term, there is no evidence Petitioner is unsuitable for parole. | 2 |
| b(2). There is zero evidence Petitioner is somehow still battling childhood depression and therefore unsuitable for parole. | 4 |
| C. The Board Failed to Consider and Weigh Mitigating Factors. | 6 |
| c(1). The board failed to make its determination based on Petitioner's individual offense behavior. | 6 |
| c(2). The Board failed to consider and weigh Petitioner's young age. | 7 |
| c(3). The Board failed to consider and weigh the significant stress Petitioner was under at the time of the offense. | 7 |
| D. Undue Political Influence from Victims' Rights Organizations in California has Created Hostility and Institutional Bias Toward Parole by the Executive to the Effect that there is A Sub Rosa No Parole Policy, Violating Petitioner's Right to Due Process. | 9 |
| CONCLUSION | 12 |

## TABLE OF CASES AND AUTHORITIES

| Case: | Page: |
|---|---|
| **Federal Cases** | |
| Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) | 9 |
| Fleming v. Nestor, 363 U.S. 603 (1960) | 11 |
| Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979) | 1, 3 |
| Hayward v. Marshall, 512 F.3d 536 (2008) | 2, 9 |
| In re Murchison, 349 U.S. 133 (1955) | 11 |
| Irons v. Carey, 505 F.3d 846 (9th Cir. 2007) | 9 |
| Johnson v. Texas, 509 U.S. 350 (1993) | 7 |
| Martin v. Marshall, 448 F.Supp.2d 1143 (N.D. Cal. 2006) | 12 |
| McCarns v. Dexter, ___ F.Supp.2d ___, 2008 WL 360827 (C.D. Cal. 2008) | 3, 9 |
| Roberts v. Corrothers, 812 F.3d 1173 (9th Cir. 1987) | 6 |
| Roper v. Simmons, 543 U.S. 551 (2005) | 7 |
| Rosenkrantz v. Marshall, 444 F.Supp.2d 1063 (C.D. Cal. 206) | 7 |
| Ryman v. Sears and Robuck, 505 F.3f 993 (9th Cir. 2007) | 2 |
| Sass v. Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006) | 1 |
| Superintendent v. Hill, 472 U.S. 445 (1985) | 5 |
| Ward v. Monroeville, 409 U.S. 57 (1972) | 10 |
| Willis v. Kane, 458 F.Supp.2d 1126 (N.D. Cal. 2007) | 5 |
| Withrow v. Larkin, 421 U.S. 35 (1975) | 11 |
| **State Cases** | |
| In re Barker, 151 Cal.App.4th 346 (2007) | 7 |
| In re Caswell, 92 Cal.App.4th 1017 (2001) | 11 |
| In re Dannenberg, 34 Cal.4th 1061 (2005) | 11 |
| In re Elkins, 144 Cal.App.4th 475 (2006) | 2, 7 |

# TABLE OF CASES AND AUTHORITIES

**Case:**                                                                                   **Page:**

**Sate Cases continued**

| | |
|---|---|
| In re Lee, 143 Cal.App.4th 1400 (2006) | 2, 8 |
| In re Roderick, 154 Cal.App.4th 242 (2007) | 9 |
| In re Rosenkrantz, 29 Cal.4th 616 (2002) | 6 |
| In re Scott II, 133 Cal.App.4th 573 (2005) | 2, 8 |
| In re Tripp, 150 Cal.App.4th 306 (2007) | 1, 9 |
| In re Weider, 145 Cal.App.4th 570 (2006) | 8 |
| People v. McCoy, 25 Cal.4th 1111 (2001) | 6 |
| People v. Prettyman, 14 Cal.4th 248 (1996) | 6 |

**California Penal Code:**

| | |
|---|---|
| sect. 3041(a) | 10 |
| sect. 3041(b) | 1 |

**California Code of Regulations, Title 15:**

| | |
|---|---|
| sect. 2345 | 12 |
| sect. 2402 | 2 |
| sect. 2402(d)(4) | 8 |

## MEMORANDUM OF LAW

### Claim I

THE BOARD OF PAROLE HEARINGS DECISION FINDING PETITIONER UNSUITABLE FOR PAROLE OVER TWO DECADES AFTER THE COMMITMENT OFFENSE WAS NOT SUPPORTED BY EVIDENCE THAT HE IS A <u>CURRENT</u> THREAT TO PUBLIC SAFETY, VIOLATING PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

---

A. <u>Petitioner has A Liberty Interest in Parole</u>

Under California's parole statutes, Penal Code § 3041(b),[1/] Petitioner has a liberty interest in parole (<u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u> (hereafter <u>Greenholtz</u>), 442 U.S. 1 (1979); <u>Sass v. Board of Prison Terms</u>, 461 F.3d 1123, 1127 (9th Cir. 2006).

Petitioner having a "liberty interest" in parole, being diligent in exhausting his state court remedies, this Court has jurisdiction.

B. <u>After 21 Plus Years Into A 15 Years to Life Sentence, There Is No Evidence Petitioner Is A CURRENT Threat to the Public</u>.

"It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion" (<u>In re Tripp</u>, 150 Cal.App.4th 306, 313 (2007)). The Board's decision in case at bench is based on two findings: the commitment offense; and in a thinly veiled attempt to make a connection to current threat to society, Petitioner's childhood depression. What the Board failed to consider is just as important what it did consider. The Board failed to consider and weigh: (1) Petitioner's individual culpability;

---

1. All codes and regulations are California, unless otherwise noted. California Code of Regulations, Title 15, will be cited, Cal. Code Regs., tit. 15.

- 1 -

(2) age at time of the offense, having just turned 18; and (3) Petitioner was under significant stress at the time of the commitment offense.

b(1). <u>Having exceeded his minimum term, there is no evidence Petitioner is unsuitable for parole.</u>

Currently, the most persuasive, and instructive authority on some evidence and how it is to be applied and weighed is the recent decision from the Ninth Circuit Court of Appeals. In the precedent setting case of <u>Hayward v. Marshall</u>, 512 F.3d 536, (9th Cir. 2008). Relying on <u>In re Lee</u>, 143 Cal.App.4th,1400 (2006); <u>In re Elkins</u>, 144 Cal.App.4th 475 (2006); and <u>In re Scott II</u>, 133 Cal.App.4th 573 (2005) (see <u>Ryman v. Sears and Robuck</u>, 505 F.3d 993, 995 (9th Cir. 2007) ["where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts"] internal quotation marks omitted), analyzing California's parole law, reviewing federal constitutional protections of the "some evidence" standard under the application of California law, the Ninth Circuit Court of Appeals concluded the suitability and unsuitability factors set out in Cal. Code Regs., tit. 15, § 2402(c) and (d), in <u>Hayward v. Marshall</u>, 512 F.3d, at 543, <u>supra</u>:

> "Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made it clear that the 'findings that are necessary to deem a prisoner unsuitable for parole,' <u>Irons [v. Carey]</u>, 505 F.3d [846,] at 851 [(9th Cir. 2007)], 2007 WL 2927359, at *3, are not that a particular factor or factors indicating unsuitability exists, but that a prisoner's release will unreasonably endanger public safety. (Citations); see Cal. Penal Code § 3041(b) (providing that the Board 'shall set a release date unless...consideration of the public safety requires a more lengthy period of incarceration for this individual'). For our purposes, then, '[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's

- 2 -

release unreasonably endangers public safety.' Lee, 143 Cal. App.4th at 1408 (citations and footnotes omitted); see also In re Elkins, 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503 (Cal. Ct. App. 2006) (holding that the 'governor, in reviewing a suitability determination, must remain focused...on facts indicating that release currently poses 'an unreasonable risk of danger to society'" (citing Cal. Code Regs. tit. 15, § 2402(a))); Scott, 133 Cal.App.4th at 591 ('The factor statutorily required to be considered and the overarching consideration, is "'public safety.'" (citing Cal. Penal Code § 3041(b)))" (emphasis and ellipses in original).

While it may be argued that Hayward v. Marshall is only "dicta," that dicta is instructive authority in the Ninth Circuit. That instruction being that parole suitability turns on two factors: (1) time, the factual predicate, has the prisoner served his minimum term?; and (2) rehabilitation, the legal predicate, is the prisoner rehabilitated? (McCarns v. Dexter, ___ F.Supp.2d ___, (C.D. Cal. 2008), 2008 WL 360827, *13, factual predicate is satisfied when prisoner has served minimum term; legal predicate is satisfied when prisoner is rehabilitated.

In that Petitioner's commitment offense will never change, as articulated by the United States Supreme Court: "The decision turns on...primarily what a man is and what he may become rather than simply what he has done" (Greenholtz, 442 U.S., at 10, supra); moreover, "[i]t is important that we not overlook the ultimate purpose of parole which is a component of the long-range objective of rehabilitation" (Id., at 13). Thus, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15). The Supreme Court also recognized that a prisoner "may become eligible for discretionary parole when the minimum term, less good time credits, has been served" (Id., at 4). While the factual predicate is time, most significant is the legal predicate,

- 3 -

rehabilitation. Rehabilitation, of course, being the ultimate determining factor. This is the <u>Greenholtz</u> doctrine: time, plus rehabilitation, equal parole.

Petitioner satisfied his minimum term on October 18, 1995 (see EXHIBIT 1, HT 4:18-19,[2]/ "minimum eligible parole date"), calendar years plus custody credits (<u>Greenholtz</u>, 442 U.S., at 4, <u>supra</u>; Penal Code § 190, 1985 ed.). Petitioner met his 15 calendar years on or about October 15, 2000 (see Penal Code § 2900.5 [time against sentence beings from day of arrest, not delivery to the Department of Corrections and Rehabilitation]). Petitioner is currently 10 plus years beyond his minimum eligible parole date, and six plus years beyond his minimum of 15 calendar years. Constructively, Petitioner has now served 29 plus years. Thus, Petitioner's suitability turns on his rehabilitation.

b(2). <u>There is zero evidence Petitioner is somehow still battling childhood depression and therefore unsuitable for parole.</u>

Commissioner Kubochi found of Petitioner that "the constant issue of depression which does affect you, requires further insight on your part. .... The way that I as a Panel Member see this (a Panel member who admits he has "no expertise in this area" (HT 35)), if you don't get a better handle on your depression..." (HT 70-71); "..., you have to be able to present additional insights as to this lifelong issue  that you've battled" (HT 72).

What lifelong battle? Yes, Petitioner suffered depression as a child, but there is not a scintilla of evidence that Petitioner

---

2. References to parole hearing transcript, EXHIBIT 1, will be noted by HT followed by page number, and line number, e.g., (HT 1:1).

has had a single bout of depression in 22 years. Several forensic experts, something Commissioner Kubochi admitted he is not one of, addressed this very issue. As far back as 1991 it was Dr. Kennedy's expert opinion: "While there is evidence of chronic childhood depression and a strong family history of depression the course of therapy has not revealed any of the features of a person with a depressive disorder. [] ...nor has he suffered major depression during his nine years of incarceration" (EXHIBIT 7, p. 2).

More recently, in 2002 it was Dr. Howlin's expert opinion that Petitioner "demonstrates insight specifically related to factors about his own recovery" (EXHIBIT 10, p. 4); and, "[t]here was no evidence of a mood or thought disorder. His Judgment appears to be sound" (Id., p. 5), concluding Petitioner "does not have a mental health disorder which would necessitate treatment, either during his incarceration period or following parole" (Id., p. 8).

In 2007, it was Dr. Marek's expert opinion: "Looking at 'the big picture,' of Jay's adjustment, it does not appear he needs psychotherapy. Indeed, a look at his file...would militate toward a conclusion of overall psychological strengths, not the opposite" (EXHIBIT 8, p. 3).

In 2005 it was Dr. Macomber's expert opinion that "if 100 men were released on parole, he would do better than 98% of them. This indicates an extremely low risk level" (EXHIBIT 9, p. 4).

"The some evidence standard provides protection against more than fabricated charges or bureaucratic mistakes—the some evidence standard also protects against arbitrary decisions" (Willis v. Kane, 458 F.Supp.2d 1126, 1136 (N.D. Cal. 2007), citing Superintendent

- 5 -

v. Hill, 472 U.S. 445, 454-454, 457 (1985)). There is zero evidence to support this artificial rationale by the Board to deny Petitioner parole, violating his right to due process.

C. <u>The Board Failed to Consider and Weigh Mitigating Factors</u>.

Although Petitioner may not be entitled to receive parole, he is entitled to have his consideration for parole "'duly considered' based upon an individualized consideration of all relevant factors" (In re Rosenkrantz, 29 Cal.4th 616, 655 (2002)).

c(1). <u>The board failed to make its determination based on Petitioner's individual offense behavior</u>.

The California Supreme Court holds that in a case where coconspirators are involved, "that guilt is based on a combination of the direct perpetrator's acts and the aiders and abettors <u>own</u> acts and <u>own</u> mental state" (People v. McCoy, 25 Cal.4th 1111, 1117 (2001)), and while an accomplice is treated the same as a perpetrator of a crime for purposes of determining guilt and imposing sentence (People v. Prettyman, 14 Cal.4th 248, 250 (1996)), continuing to do so in making a parole suitability determination violates Petitioner's due process guarantee to "in individualized consideration on all relevant factors" (see Roberts v. Corrothers, 812 F.2d 1173, 1180 ["Any participant in a conspiracy may be equally culpable as a matter of law. The parole inquiry into the offense severity is more factual, however, and focuses on the 'actual offense behavior' of the individual prisoner"]).

Petitioner's parole suitability, therefore, is not to be determined on the offense behavior of Meier's, "who had the ability to lead others and influenced the co-defendants to help him kill his mother" (EXHIBIT 4, p. 18), or what Parker actually did during

- 6 -

the commission of the offense, but on what Petitioner actually did during the commission of the offense and his attitude during and after the offense.

c(2). <u>The Board failed to consider and weigh Petitioner's young age.</u>

Not only is there the passage of time since the commitment offense, 22 years, but the Board failed to consider and weigh Petitioner's youth at the time of the offense, having turned 18 just 76 days prior (EXHIBIT 4, p. 9; EXHIBIT 5, RT 5).

As horrible as the offense was, and no one is saying this was not a terribly horrible offense, but where Petitioner is concerned, it was committed by an immature, cognitively, emotionally and socially challenged teen-ager; thus: "The reliability of the fact of his crime as a predictor for his dangerousness is further diminished by petitioner's age at the time of the offense" (<u>Rosenkrantz v. Marshall</u>, 444 F.Supp.2d 1063, 1085 (C.D. Cal. 2006); <u>see also</u> <u>Roper v. Simmons</u>, 543 U.S. 551, 561-562 (2005); <u>Johnson v. Texas</u>, 509 U.S. 350, 368 (1993); <u>In re Elkins</u>, 144 Cal.App.4th, at 500, <u>supra</u>; <u>In re Barker</u>, 151 Cal.App.4th 346, 376-377 (2007)).

The Board's failure to consider and weigh Petitioner's young age as a mitigating factor violated his right to due process.

c(3). <u>The Board failed to consider and weigh the significant stress Petitioner was under at the time of the offense.</u>

Psychologically wise, Deputy Commissioner Melvin, rendering the suitability finding in the split decision, relying on findings by the forensic experts and Petitioner's testimony, determined that Petitioner "committed the crime as a result of significant stress in his life. There is reference in one of the reports, psychological

- 7 -

reports from the doctor, who notes the depression and drug use. He also indicated on the record the stress that you were dealing with as a result of the depression and drug use" (EXHIBIT 1, HT 73).

Stress is a factor tending to show suitability for parole (Cal. Code Regs., tit. 15, § 2402(d)(4)). "The regulations requiring the Board to consider the role that such stress may have played in the commission of the crime reflects the law's awareness of human behavior." (In re Weider, 145 Cal.App.4th 570, 590 (2006). While Deputy Commissioner Melvin considered and weighed Petitioner's stress in finding him suitable for parole; while Commissioner Kubochi did not, nor did the en banc Panel "consider this evidence at all. This it is bound to do" (Id.); In re Lee, 143 Cal.App.4th, at 1412, supra; In re Scott II, 133 Cal.App.4th 573, 596 (2005) [the Governor's failure to consider significant stress was "arbitrary and capricious in the sense that he failed to apply the controlling legal principles to the facts before him"]).

While the Board may not have to articulate every factor in the regulations when determining parole suitability, especially those which there is no evidence or not being relevant, it cannot ignore the applicable regulations when there is reliable evidence relevant to that factor. Failure to consider and weigh the stress factor as it applies to Petitioner violated his right to due process.

The State court decision is unreasonable in light of the facts and unsupported by any evidence that Petitioner is a current threat to the public, violating his right to due process.

The Ninth Circuit warned: "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the

- 8 -

extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes" (Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007); Hayward v. Marshall, 512 F.3d, at 545, supra). While the Board's "reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can initially be justified as fulfilling the requirements of state law[,] [¶] "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and prior criminal history, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" (Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003); In re Roderick, 154 Cal.App.4th 242, 264 (2007) [a rational connection must be made between the commitment offense 20 years ago and statutory basis for denial-current threat to public safety]; In re Tripp, 150 Cal.App.4th, at 309, supra ["the viciousness of the commitment offense must be balanced against the passage of time and rehabilitation"]). Thus, after exceeding the minimum term of the sentence, satisfying the factual predicate, suitability turns on the legal predicate, rehabilitation (McCarns v. Dexter, 2008 WL 360827, *13, supra). Unquestionably, Petitioner has satisfied both prongs and any further imprisonment serves no legitimate penological interest.

D. **Undue Political Influence from Victims' Rights Organizations in California has Created Hostility and Institutional Bias Toward Parole by the Executive to the Effect that there is an Sub Rosa No Parole Policy, Violating Petitioner's Right to Due Process.**

The revelation by Ms. Harris-Ritter and Ms. St Julian that parole commissioners are terminated for granting parole at the behest of

the Doris Tate Crime Victims Bureau (EXHIBIT 18; EXHIBIT 19), in essence, dictating parole policy, has compromised the parole process to the point, as the Honorable Robert F. Moody stated, "having a devastating impact upon the integrity of the justice system and upon the administration of the prisons themselves" (EXHIBIT 23, p. 2). The problem is systemic and violates due process in the most violent manner of constitutional guarantees.

Upon learning of Ms. Harris-Ritter's revelations that the victims activists dictate parole policy and have parole commissioners fired for simply doing what the law requires, on June 13, 2007, Senate President Pro Tem, Don Parata, released a statement that the Board's practices are "troubling, to say the least" (EXHIBIT 24), and a hearing was forthcoming. A hearing has yet to be held, nor has any change been proposed.

Simply, victims activists have the Executive and Legislative branches, and it would appear, much of the judicial branch in California, politically blackmailed and are impotent from doing anything about it, thus a mere .25 percent parole rate for indeterminately sentenced prisoners. That is not "shall normally" mandated by Penal Code § 3041(a).

Although "[d]ue process requires a neutral and detached judge in the first instance" (<u>Ward v. Monroeville</u>, 409 U.S. 57, 61-62 (1972)), how can that due process be satisfied when parole commissioners have to fear being terminated if they grant parole? And how can the Executive and legislative branches be free to write, adjust and carry out laws with the victims groups threatening to campaign vigorously against them as being "soft on crime"?

It may be a thin line between the peoples right to lobby their government and dictating policy, but when that line is crossed and it effects the rights of prisoners, even that is forbidden by the constitution. "What is perfectly clear is that hate, fear and prejudice play the same role today, in the destruction of human rights in [California] that they did in England when a frenzied mob of lords, judges, bishops and shoemakers turned the Titus Oats blacklist into a hangman's record" (Flemming v. Nestor, 363 U.S. 603, 629 (1960)). All one need do to see the new "Titus Oats blacklist" (indeterminately sentenced prisoners) is log onto the Doris Tate Crime Victims Bureau website at - information@doristate.com.

"Not only is a bias decision-maker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness" (Withrow v. Larkin, 421 U.S. 35, 37 (1975), quoting In re Murchison, 349 U.S. 133, 136 (1955)). Simply, the Board, operating under the Governor's sub rosa no parole policy, to the threats of victims activists, violates due process.

This is a very serious and most important matter. Because, for what ever reason, of the unwillingness of the California courts to give this issue the attention required, giving it only lip service (see In re Caswell, 92 Cal.App.4th 1017, 1030 (2001) ["Indeed, the statutory and administrative framework under which the Board operates invites debate over the role political influence and public clamor play in the parole review scheme"]; In re Dannenberg, 34 Cal.4th 1061, 1105 (2005) [parole commissioners "have little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration on the parole decision

- 11 -

is strong"]), it is respectfully requested that this Court appoint counsel and conduct an EVIDENTIARY HEARING and, if the evidence proves Petitioner's allegations true, fashion a remedy that will restore integrity and justice to California's parole process for indeterminately sentenced prisoners.

## C O N C L U S I O N

It is respectfully requested that the Court issue an ORDER for the respondent to show cause why the writ should not be granted; and, in that Petitioner has exceeded his uniform term for the gravity of his commitment offense and its threat to public safety by 8 plus years, why all excess credits should not be applied to his period of parole (Martin v. Marshall, 448 F.Supp.2d 1143, 1145 (N.D. Cal. 2006); Cal. Code Regs., tit. 15, § 2345); additionally, why the Court should not conduct an evidentiary hearing to develop the evidence showing the undue political influence on the Executive and California Legislature by victims' rights organizations in California.

DATED: April 12, 2008

Respectfully submitted,

Matthew Adam Jay
Petitioner in pro se